IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHAWN MICHAEL SNYDER,

                                        Plaintiff,

v.                                                      Civil Action No.
                                                        9:05-CV-01284 (TJM/DEP)

GLENN S. GOORD, *et al.*,

                                        Defendants.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

SHAWN MICHAEL SNYDER, *Pro Se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO              CHRISTOPHER W. HALL, ESQ.
Attorney General of              Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT, RECOMMENDATION AND ORDER

        Plaintiff Shawn Michael Snyder, an openly gay New York State prison

inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this

action pursuant to 42 U.S.C. § 1983 to complain principally of a series of

occurrences which he attributes to his sexual orientation, including

harassment by prison workers and fellow inmates and, in one instance, an assault by a corrections officer.  Plaintiff's complaint, which is comprehensive, asserts constitutional claims under the First, Fourth, Eighth and Fourteenth Amendments arising out of those incidents as well as his apparently unsuccessful efforts to contact the National Gay and Lesbian Task Force to elicit that agency's assistance.

In lieu of answering his complaint, defendants have instead moved for summary judgment dismissing plaintiff's claims based upon his failure to exhaust available administrative remedies before commencing suit and, in the case of some of the defendants and one entire claim, plaintiff's failure to allege and establish their personal involvement in the constitutional deprivations at issue.  For the reasons set forth below I recommend that plaintiff's claims against defendants Goord, Roy, Miller and Plescia, as well as his cause of action for alleged interference with his legal mail, be dismissed on the basis of a lack of sufficient personal involvement in the constitutional violations alleged.  Finding the existence of a genuine issue of material fact surrounding plaintiff's efforts to exhaust administrative remedies, however, I recommend that the portion of defendants' motion seeking dismissal of plaintiff's remaining claims on this procedural basis be denied.

I.    BACKGROUND[1]

Plaintiff, who at the times relevant to his claims was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), has over time been confined in various DOCS facilities. Complaint (Dkt. No. 2) at 2.  The bulk of plaintiff's claims were precipitated by events which transpired while he was housed in the Washington Correctional Facility ("Washington") although, as will later be seen, certain of the occurrences which followed his transfer out of Washington and ultimately into the Groveland Correctional Facility ("Groveland") are relevant to some of his claims, as well as to the issue of whether he properly exhausted available administrative remedies before commencing this action.  *Id.*; *see also* O'Brien Aff. (Dkt. No. 20) ¶ 4.  The plaintiff is gay, a fact which according to him was common knowledge within Washington during the time of his confinement

---

[1]    The vast majority of the information serving as a backdrop for the court's decision is drawn from plaintiff's complaint which, as notarized, qualifies as a functional equivalent of an affidavit for purposes of the pending motion.  28 U.S.C. § 1746 (1994); Fed. R. Civ. P. 56(e); *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1998) (citations omitted); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Yearwood v. LoPiccolo*, No. 95 CIV. 2544, 1998 WL 474073, at *5-*6 & n.2 (S.D.N.Y. Aug. 10, 1998); *Ketchmore v. Gamache*, No. 96 CIV. 3004, 1997 WL 250453, at *4 n. 1 (S.D.N.Y. May 12, 1997).  As required, for the purpose of analyzing defendants' arguments I have drawn all inferences, and resolved any ambiguities, in favor of the plaintiff, as the non-moving party.  *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

within that facility.  Complaint (Dkt. No. 2) ¶ 2.

The circumstances giving rise to plaintiff's centerpiece claim date back to May of 2005, when he was transferred from another location within Washington into the prison's B-2 housing dormitory.  Complaint (Dkt. No. 2) ¶ 1.  Immediately following that transfer Snyder began to experience verbal threats and abuse, attributed by the plaintiff to his sexual orientation, at the hands of defendant Whittier, a corrections officer.  *Id.* ¶ 1.  According to Snyder the abuse spread, fueled by encouragement from defendant Whittier, resulting in harassment from fellow inmates, who engaged in a variety of abusive and hostile acts which included the throwing of trash, objects, debris and body fluids at him.  *Id.* ¶¶ 2-27.

Defendant Whittier's ongoing harassment of the plaintiff led to a confrontation between the two on June 1, 2005, during the course of which Snyder was physically assaulted by the officer, who thrust his elbow and forearm into plaintiff's throat, forcing him to the floor. *Id.* ¶¶ 24-36.  Once plaintiff was on the floor, defendant Whittier placed his knees on Snyder's middle back area and neck, and pulled his left arm up behind his back.  *Id.* Toward the end of the encounter defendant Whittier pulled the plaintiff up by his arm and hair and dragged him out of the area, pushing him into a wall and

4

punching his kidney area several times in the process. *Id.* ¶¶ 33-39.

On June 3, 2005 plaintiff was treated for injuries sustained during the encounter with Corrections Officer Whittier, and was transferred into the E-1 dormitory within Washington. Complaint (Dkt. No. 2) ¶¶ 47, 51. While housed in that unit Snyder was approached and advised by several inmates that they had been encouraged by other inmates, as well as by defendant Whittier, to assault him. *Id.* ¶¶ 51-54.

Plaintiff was again transferred within Washington on or about June 20, 2005, on this occasion having been re-assigned to the D-1 housing dormitory. Complaint (Dkt. No. 2) ¶ 57. While residing within that unit, plaintiff had his locker broken into and some of his personal property stolen, an event for which he blames fellow inmates. *Id.* ¶¶ 70.

Out of concern over reprisals which could result from his taking such action, plaintiff did not file a formal grievance regarding the assault by Corrections Officer Whittier while at Washington. Complaint (Dkt. No. 2) ¶¶ 51-54. As justification for that fear, plaintiff cites defendant Whittier's reported efforts to have him harmed by other inmates following his transfer out of the dormitory to which Whittier was assigned. *Id.* Plaintiff did, however, take other steps while at Washington to lodge complaints regarding

5

defendant Whittier's actions.  After earlier complaints registered verbally to other prison employees, including Corrections Officers Funnye and Graves, went unaddressed, *see* Complaint (Dkt. No. 2) ¶¶ 21, 42, plaintiff sent a letter dated July 7, 2005 to Corrections Lieutenant Greene, complaining of the assault by defendant Whittier and expressing fear of retribution at the hands of that corrections officer; a copy of that letter was forwarded by Snyder to Corrections Lieutenant Hopkins.[2]  Complaint (Dkt. No. 2) ¶ 60 & Exh. 1.  Five days later, apparently precipitated by his letter to Lieutenant Greene, plaintiff was asked by Corrections Sergeant Belden to provide a formal, written statement regarding the assault, and was taken by Sergeant Belden to the prison infirmary for a medical evaluation.  Complaint (Dkt. No. 2) ¶ 61.

On July 14, 2005, plaintiff was transferred temporarily into the Great Meadow Correctional Facility, where he was interviewed on the following day by defendant Miller, an Assistant Deputy Inspector General for the DOCS, regarding the alleged assault by defendant Whittier.  Complaint (Dkt. No. 2) ¶¶ 62-64.  During that session, defendant Miller advised Snyder that he had

---

[2]    Plaintiff's complaint does not provide specifics regarding the official positions of Lieutenants Greene and Hopkins including, notably, whether either could properly be characterized as Corrections Officer Whittier's supervisor, nor does he indicate whether those individuals were officially designated by prison officials at Washington to receive inmate complaints regarding the actions of corrections workers.

been transferred out of Washington for his safety, and that in light of his

sexual orientation and the significant probability that similar acts would recur

in the future, his contemplated transfer into the Greene Correctional Facility

had been rescinded, and instead he would be moved "West and closer to

home[.]"  *Id.* ¶ 66.  Later that day, plaintiff was transferred into the Groveland

Correctional Facility.  *Id.* ¶ 67.

Plaintiff reiterated his interest in pursuing his claims against Corrections

Officer Whittier by letter dated July 22, 2005 sent to Investigator Miller.

Complaint (Dkt. No. 2) Exh. 3.  Despite sending subsequent written

communications to defendant Miller and others, however, as of the time of

commencement of this action plaintiff still had not been apprised of the status

of the Inspector General's investigation into his allegations regarding

Corrections Officer Whittier.  *Id.* ¶¶ 67-69; *see also* Complaint (Dkt. No. 2)

Exhs. 9, 17.

On August 24, 2005, while at Groveland, plaintiff filed a formal

grievance regarding the physical assault involving Corrections Officer

Whittier.  Complaint (Dkt. No. 2) ¶ 76 and p. 60, ¶ B.  That grievance was

rejected, however, based upon the fact that it was filed beyond the fourteen

day deadline for initiating such grievances, and did not recite any mitigating

circumstances which would provide a ground for overlooking its lateness.[3]
*Id.; see also* O'Brien Aff. (Dkt. No. 20) ¶ 8 & Exh. 2; Defendants' Local Rule
7.1(a)(3) Statement (Dkt. No. 22) ¶ 27.  Plaintiff did not appeal that
determination, or any other grievance alleging harassment, excessive force,
or other similar claims arising out of events at Washington, to the Central
Officer Review Committee ("CORC").  Eagan Aff. (Dkt. No. 20) ¶¶ 5-6.

On August 19, 2005 plaintiff endeavored to send a letter to the National
Gay and Lesbian Task Force seeking the assistance of that organization;
claiming that it qualified as legal mail, Snyder attempted to forward that
communication without paying for postage.  Complaint (Dkt. No. 2) ¶ 71.
Prison officials rejected plaintiff's efforts, however, concluding that the
communication did not fall within the prevailing definition of legal mail, and
returned it to the plaintiff on August 22, 2005.  *Id.*  Plaintiff thereafter resent
the letter on August 23, 2005, with proper postage affixed.  *Id.* ¶ 72.  The
letter was later returned to the plaintiff on September 2, 2005, marked as
"undeliverable".  *Id.* ¶ 73.  When the letter was returned plaintiff found that it

---

[3]    DOCS Directive 4040, which governs the filing of inmate grievances,
permits an Inmate Grievance Program Supervisor ("IGPS") to permit the late filing of
grievances when presented with "mitigating circumstances."  *See* O'Brien Aff. (Dkt. No.
20) ¶ 12.

had been opened, apparently by personnel within the Groveland mailroom.
*Id.*

On August 29, 2005 plaintiff filed a grievance at Groveland seeking, as relief, a determination that the National Gay and Lesbian Task Force constituted a legal entity and that, as such, he should be permitted to send and receive correspondence from that organization as "legal mail". *Id.* ¶ 74 & Exh. 16. Plaintiff's grievance was denied at the local level, including by the facility superintendent, and that unfavorable determination was upheld on appeal to the CORC. *Id.* ¶ 75 & Exh. 16.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on or about September 27, 2005.[4] Dkt. No. 2. Named as defendants in Snyder's complaint are DOCS Commissioner Glenn S. Goord; Richard Roy, the DOCS Inspector General; Assistant Deputy Inspector General Mark Miller; James Plescia, the Superintendent at Washington; and Corrections Officers Whittier and Funnye. *Id.* Plaintiff's complaint asserts a variety of claims growing out of the events at Washington and Groveland, alleging deprivation of his rights

---

[4]     This action was initially filed in the United States District Court for the Western District of New York, but was transferred here by order issued by District Judge David G. Larimer on September 29, 2005. *See* Dkt. No. 4.

under the First, Fourth, Eighth and Fourteenth Amendments to the United

States Constitution, as well as a host of pendent state statutory and common

law claims.[5]  As relief, plaintiff seeks both the entry of an injunction and

awards of compensatory and punitive damages.

In lieu of answering plaintiff's complaint, defendants instead have

chosen to interpose a motion seeking the entry of summary judgment.  Dkt.

No. 20.  In that motion, which was filed on March 9, 2006, defendants assert

that plaintiff's harassment and excessive force claims are procedurally barred

based upon his failure to file and pursue to completion an internal grievance

regarding those matters before commencing suit.  *Id.*  Defendants also argue

that defendants Goord, Ray, Plescia, and Miller were not personally involved

in any of the violations asserted, and that all of the defendants lack personal

involvement with regard to plaintiff's legal mail cause of action.  *Id.*  Plaintiff

---

[5]        Plaintiff's complaint, which is comprised of seventy-two typewritten pages
and several attached exhibits, is not lacking in detail.  Despite its refreshing clarity,
however, plaintiff's complaint is in many respects repetitive and fails to comply with the
governing provisions of the Federal Rules of Civil Procedure which require, *inter alia*,
that a pleading contain "a short and plain statement of the claim showing that the
pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a).  This requirement is more than
merely technical, and instead is designed to permit a responding party and the court to
accurately gauge the allegations of a complaint and permit the issues in a case to be
properly framed.  *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957); *Phillips
v. Girdich*, 408 F.3d 124, 127-29 (2d Cir. 2005); *Salahuddin v. Cuomo*, 861 F.2d 40, 42
(2d Cir. 1988); *In re Ferro Corp. ERISA Litig.*, 422 F.Supp.2d 850, 857 (N.D. Ohio
2006); *Rashidi v. Albright*, 818 F.Supp. 1354, 1355-56 (D. Nev. 1993).

responded in opposition to defendants' motion on April 12, 2006, Dkt. No. 23,

and defendants have since filed a reply in further support of their motion.

Dkt. No. 23.

Defendants' motion, which is now ripe for a determination, has been

referred to me for the issuance of a report and recommendation pursuant to

28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Consequences of Defendants' Failure to Answer or Move to
            Dismiss

While plaintiff has not raised this issue, one could argue that by their

failure either to answer or to interpose a motion cognizable under Rule 12(b)

of the Federal Rules of Civil Procedure within the allotted time, defendants

are in default.  Defendants' motion is brought under Rule 56 of the Federal

Rules of Civil Procedure and does not, as an alternative, seek dismissal

under Rule 12(b).  While Rule 12(b) of the Federal Rules of Civil Procedure

contains a specific provision in effect staying the requirement of answering a

complaint during the pendency of a motion brought under its provision, Rule

56 does not contain a parallel provision.

Some courts confronted with this procedural setting have concluded

11

that the interposition of a motion for summary judgment qualifies as otherwise

defending against a complaint, and that as such no default is presented

under the circumstances.  *See, e.g., Rashidi,* 818 F. Supp. at 1355-56.

Other courts, however, have noted that there is no automatic entitlement to a

delay of the time to answer as a result of the filing of a summary judgment

motion, the matter instead being addressed to the discretion of the court to

extend that period, as authorized under Rule 6(b) of the Federal Rules of

Civil Procedure.[6]  *See*, *e.g.*, *Poe v. Cristina Copper Mines, Inc.*, 15 F.R.D. 85,

87 (D. Del. 1953).

Since this is not a situation where a motion to dismiss was initially filed

but converted by the court to a summary judgment motion, a circumstance

which would warrant a finding that the stay provisions of Rule 12 apply, *see*

*Brooks v. Chappius*, No. 05-CV-6021, 2006 WL559253, at *1 (W.D.N.Y. Mar.

1, 2006), defendants are technically in default.  In light of the circumstances

---

[6]     That rule provides, in relevant part, that

> [w]hen by these rules or by a notice given thereunder or by
> order of court an act is required or allowed to be done at or
> within a specified time, the court for cause shown may at
> any time in its discretion (1) with or without motion or notice
> order the period enlarged.

Fed. R. Civ. P. 6(b).

presented, however, I find that the defendants have demonstrated their

intention to defend against plaintiff's claims and, concluding that there is

good cause for doing so, will order a stay of their time to answer plaintiff's

complaint until ten days after a determination by the assigned district judge in

connection with the pending motion.  *See Rashidi*, 818 F.Supp. at 1355-56.

B.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil

Procedure.  Under that provision, summary judgment is warranted when "the

pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits . . . show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old

Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is

"material", for purposes of this inquiry, if "it might affect the outcome of the

suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)

(citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are
entitled to special latitude when defending against summary judgment
motions, they must establish more than merely "metaphysical doubt as to the
material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*,
168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider
whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial
burden of demonstrating that there is no genuine dispute of material fact to
be decided with respect to any essential element of the claim in issue; the
failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S.
at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83.  In the event
this initial burden is met, the opposing party must show, through affidavits or
otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e);
*Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106
S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any
ambiguities, and draw all inferences from the facts, in a light most favorable

to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132

F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where

"review of the record reveals sufficient evidence for a rational trier of fact to

find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713,

719 (2d Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250,

106 S. Ct. at 2511 (summary judgment is appropriate only when "there can

be but one reasonable conclusion as to the verdict.").

     C.   <u>Failure to Exhaust Administrative Remedies</u>

     In their motion defendants assert that plaintiff's harassment and assault

claims growing out of events which occurred at Washington are procedurally

barred, based upon his failure to file and pursue to completion a timely

grievance relating to those claims.  Plaintiff responds by asserting that his

failure to file a grievance regarding the matter while at Washington was the

product of his fear of retaliation, and further argues that the requirement of

exhaustion should be excused based upon the fact that his claims were, in

fact, investigated by the DOCS Inspector General.

     The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996), altered the inmate litigation landscape

considerably, imposing several restrictions on the ability of prisoners to

maintain federal civil rights actions.  One such restriction introduced by the

PLRA requires that "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. §

1997e(a).  The Supreme Court has held that the "PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532,

122 S.Ct. 983, 992 (2002).  The PLRA's exhaustion requirement thus applies

to plaintiff's excessive force claims absent a finding of sufficient basis to find

that plaintiff's failure to exhaust was justified or should be excused.  *Ruggiero*

*v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

New York prison inmates are subject to an Inmate Grievance Program

established by the DOCS, and recognized as an "available" remedy for

purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL

324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d

606 (2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).

The New York Inmate Grievance Program consists of a three-step review

process.  First, a written grievance is submitted to the Inmate Grievance

Review Committee ("IGRC") within fourteen days of the incident.[7]  7

N.Y.C.R.R. § 701.7(a).  The IGRC, which is comprised of inmates and facility

employees, then issues a determination regarding the grievance.  7

N.Y.C.R.R. § 701.7(a).  If an appeal is filed, the superintendent of the facility

next reviews the IGRC's determination and issues a decision.  *Id.* § 701.7(b).

The third level of the process affords the inmate the right to appeal the

superintendent's ruling to the Central Office Review Committee ("CORC"),

which makes the final administrative decision.  *Id.* § 701.7(c).  Absent the

finding of a basis to excuse non-compliance with this prescribed process,

only upon exhaustion of these three levels of review may a prisoner seek

relief pursuant to section 1983 in federal court.  *Reyes v. Punzal*, 206 F.

Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No.

00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

        The record before the court confirms Snyder's awareness of New

York's IGP.  Plaintiff in fact grieved the failure of prison officials at Groveland

to treat his correspondence to the National Gay and Lesbian Task Force as

---

        [7]        The Inmate Grievance Program supervisor may waive the timeliness of
the grievance submission due to "mitigating circumstances."  7 N.Y.C.R.R. §
701.7(a)(1).

legal mail and unsuccessfully pursued that grievance through to a determination by the CORC.  Accordingly – and defendants do not argue otherwise – plaintiff has fulfilled his obligation to exhaust administrative remedies with regard to his legal mail claim before commencing this action.

Distinctly different circumstances obtain with regard to plaintiff's claims of the use of excessive force and harassment by prison officials and fellow inmates.  While plaintiff did file a grievance regarding those matters, the grievance was rejected as untimely, and that determination was neither appealed to the CORC, nor did plaintiff commence a second grievance challenging the untimeliness rejection, a course which was apparently available to him under the IGP.[8]

This is not to say that plaintiff cannot be said to have exhausted available administrative remedies.  It should be noted that the three tiered IGP set forth in the controlling regulations does not describe the sole method for a New York State prison inmate to complain of prison conditions including, notably, the use of excessive force.  *Heath v. Saddlemire*, No. 9:96-CV-1998*,*

_____

[8]        Although there is no need to address this argument since plaintiff failed to pursue the matter through to the CORC, had he done so with regard to the excessive force and harassment grievance filed at Groveland, he nonetheless would have failed to satisfy the PLRA's exhaustion requirement since, as the Supreme Court has now made clear, the filing and pursuit to completion of an untimely grievance does not satisfy the Act's exhaustion requirement.  *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2382 (2006).

2002 WL 31242204, at *4 (N.D.N.Y. Oct. 7, 2002).  Indeed, the IGP

regulations themselves provide that the three tiered mechanism "'is intended

to supplement, not replace, existing formal or informal channels of problem

resolution.'"  *Id.* (quoting 7 N.Y.C.R.R. § 701.1(a)).  One of those alternative

methods is a process for informal, expedited review of allegations of

harassment by prison officials.  7 N.Y.C.R.R. § 701.11; *Perez*, 195 F.

Supp.2d at 543.  In this instance, an issue of fact exists surrounding whether

plaintiff complied with section 701.11 by submitting a letter regarding

Corrections Officer Whittier's actions to Lieutenant Greene.  *See Perez*, 195

F. Supp.2d at 543.

Even assuming that plaintiff's efforts to address Corrections Officer

Whittier's actions by writing to Lieutenant Green did not suffice to exhaust

available remedies, the court must determine whether there is a basis to

overlook this deficiency and permit the plaintiff to nonetheless proceed with

his excessive force and harassment claims.  The situations under which

courts have excused an inmate's failure to comply with the IGP's three tier

system generally one or more of the categories, including when 1)

administrative remedies are not in fact available to the prisoner; 2) the

defendants have either waived the defense or engaged in conduct which

should estop them from raising it; and 3) other special circumstances,

including a reasonable misunderstanding of the grievance procedure, which

justify the inmate's failure to comply with the applicable administrative

procedural requirements.[9]  *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.

2004); *see also Ruggiero*, 467 F.3d at 175 (citing *Hemphill*).  If the court

deems any of these three categories applicable, then plaintiff's claims may be

considered exhausted and should not be dismissed.[10]  *Hemphill*, 380 F.3d at

690-91.

    1.    <u>Availability Of Administrative Remedies</u>

Under certain circumstances the behavior of prison officials may have

---

[9]     As this case aptly illustrates, many of the typical fact patterns presented in cases involving an inmate's failure to exhaust do not fit neatly into any single category, but instead may overlap into two, or potentially even all three, of the groupings identified in *Hemphill*.  *See Giano v. Goord,* 380 F.3d 670, 677 n. 6.  This fact may well account for a blurring of these categories in a large share of Second Circuit PLRA cases.  *Id.*

[10]     Relying upon case law which has since been supplanted in light of the Supreme Court's contrary decision in *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983 (2002), plaintiff argues that he was not required to exhaust administrative remedies in light of the nature of his claim.  The case upon which Snyder principally relies, however, *Lawrence v. Goord*, 238 F.3d 182 (2d Cir. 2001), has since been vacated, 535 U.S. 901, 122 S. Ct. 1200 (2002), and the Court has now made it clear in *Porter* that PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter,* 534 U.S. at 532, 122 S. Ct. at 992; *Ruggiero*, 380 F.3d at 173 (citing *Porter*).  The contention implicit in plaintiff's argument, to the effect that his reliance upon pre-*Porter* case law as a basis for not filing a formal grievance was appropriate, citing *Rodriguez v. Westchester County Jail Correctional Dept.*, 372 F.3d 485 (2d Cir. 2004), is misplaced, since *Porter* was decided some three years prior to the events at issue.

the legal affect of rendering administrative remedies functionally unavailable. *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004).  In such cases, the finding that the three tiered IGP was open to the plaintiff inmate does not necessary end the inquiry.  *Hemphill*, 380 F.3d at 686-88.  Like the plaintiff in *Hemphill*, Snyder argues that he was deterred from filing a grievance while at Washington in light of threats made against him, principally by Corrections Officer Whittier.  As was also the situation in *Hemphill*, however, plaintiff did avail himself of other avenues of recourse including to write a letter of complaint to a corrections lieutenant, thereby potentially signaling that his claims of fearing retribution are less than genuine.

When, as in this case, an inmate asserts that his or her resort to the grievance process was deterred based upon conduct such as threats by prison officials, the question of whether a sufficient basis to negate a finding of "availability" has been established entails an objective inquiry, focusing upon whether "'a similarly situated individual of ordinary firmness' [would] have deemed them available." *Id.* at 688 (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).  Plaintiff's complaint and papers in opposition to defendants' motion, in which he asserts that his fears of retribution were based in part upon defendant Whittier's reported efforts to have him harmed

by other inmates following his transfer out of the dormitory to which he had been assigned, raises genuine issues of material fact in connection with the objective test to be applied under *Hemphill,* thus precluding the entry of summary judgment.

Urging the court to disregard the strictures associated with evaluation of a summary judgment motion and to proceed to assess plaintiff's credibility, in reliance upon the Second Circuit's decision in *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (characterizing plaintiff's version of the events as so wholly credible that no reasonable jury could believe it), defendants contend that plaintiff's claimed fear of retribution does not suffice under *Hemphill* to serve as a counterweight to the availability of the IGP in New York.  I recommend that the court decline defendants' invitation to assure the role of factfinder, and instead find that plaintiff's assertion that he feared reprisal is sufficient to raise a genuine issue of material fact regarding whether administrative remedies were available to him.

2.   Waiver and Estoppel

Since defendants have raised exhaustion of remedies, an affirmative defense, at the earliest available opportunity, they have not waived the defense.  The circumstances now presented, however, do provide a basis

upon which an estoppel could potentially be predicated.

Prison officials may be estopped from defending against an inmate civil rights action based upon the plaintiff's failure to exhaust available administrative remedies, including when "(1) an inmate was led to believe by prison officials that his alleged incident was not a 'grievance matter' and assured that his claims were otherwise investigated . . . (2) an inmate makes a 'reasonable attempt' to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts, and (3) the state's time to respond to the grievance has expired." *Martinez v. Williams*, 349 F.Supp. 2d 677, 683 (S.D.N.Y. 2004) (citing and quoting, *inter alia*, *O'Connor v. Featherston*, No. 01 Civ. 3251, 2002 WL 818085, at *2-*3 (S.D.N.Y. Apr. 29, 2002)).  Thus, for example, a defendant who fails to forward an inmate's complaint to a grievance officer in a timely manner may be estopped from invoking the defense.  *Hemphill*, 380 F.3d at 688-89.  Similarly, an estoppel may be found where a defendant's use of force or threats inhibit an inmate's ability to utilize grievance procedures.  *Ziemba v. Wezner*, 366 F.3d 161, 162-64 (2d Cir. 2004).

In this instance there is a potential basis for finding an estoppel.

Plaintiff's complaints against Corrections Officer Whittier were the subject of an investigation by the DOCS Inspector General, a fact of which the plaintiff was keenly aware.  Plaintiff's apparent belief that this investigation obviated the need for him to file a grievance regarding the issue was in all likelihood fortified when, in response to his grievance filed at Groveland, he was advised by the IGP Supervisor at that facility that if the matter had previously been brought "to some administration's attention [,]. . . it is not necessary to have this matter readdressed."  *See* Complaint (Dkt. No. 2) Exh. 12.  This response may well have dissuaded the plaintiff from pursuing the matter further, including to press his otherwise untimely grievance to the CORC or to attempt to convince officials at Groveland that mitigating circumstances existed to accept his otherwise untimely grievance.  *See* 7 N.Y.C.R.C. § 701.7(a)(1).  Accordingly, in my view a reasonable factfinder could conclude that defendants should be estopped from asserting a defense based upon failure to exhaust.[11]

### 3.   Special Circumstances

The third category of circumstances under which an inmate's failure to

---

[11]     It should be noted that fear of retribution can also provide a basis for finding that a defendant should be estopped from asserting failure to exhaust as a defense.  *See Hemphill*, 380 F.3d at 688-89.

exhaust may be excused was addressed by the Second Circuit in *Giano v. Goord,* 380 F.3d 670 (2d Cir. 2004).  In *Giano,* the court rejected the concept of a categorical statement regarding the "special circumstances" exception, instead, determining that the court should "[look] at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way."  380 F.3d at 678.

Defendants claim that plaintiff has not shown special circumstances which might explain why his grievance was late.  Plaintiff counters that he should be entitled to the benefit of this special circumstances exception for two reasons.  First, Snyder again asserts that his failure to file a grievance was motivated out of fear of retribution, based upon his efforts to seek review of the matter by the Inspector General's office.  Additionally, plaintiff notes that his complaint regarding Corrections Officer Whittier was the subject of at least one letter to prison officials, resulting in an investigation by the DOCS Inspector General.  Such efforts can provide a basis for finding exhaustion notwithstanding the technical failure of a prisoner to avail himself or herself of the three tiered IGP set forth in the governing regulations.  *See Heath*, 2002 WL 31242204, at \*4-\*5; *Perez*, 195 F. Supp.2d at 545-46; *see also Marvin v. Goord*, 255 F.3d 40, 43 n. 3 (2d Cir.2001) ("Resolution of the matter through

informal channels satisfies the exhaustion requirement, as, under the administrative scheme applicable to New York prisoners, grieving through informal channels is an available remedy.").  In order to avail himself of this exception, however, plaintiff must demonstrate that his informal complaints led to a favorable resolution in communication with his charges of misconduct.  *Thomas v. Cassleberry*, 315 F.Supp.2d 301, 304 (W.D.N.Y.2004) (rejecting plaintiff's argument that defendants' motion for summary judgment for failure to exhaust should be denied because although plaintiff complained to the Inspector General's Office, there were no allegations that his complaints resulted in a favorable resolution); *Grey v. Sparhawk*, No. 99 CIV. 9871, 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) (complaint filed directly with the Inspector General found insufficient to fulfill exhaustion requirement); *cf. Giano*, 380 F.3d at 679 (finding that plaintiff's attempt to expose allegedly retaliatory behavior during a disciplinary hearing which centered upon the same retaliatory act which he complains provided a basis to find justification for plaintiff's failure to exhaust).  While plaintiff is unable to make this claim, it is purely the product of the failure of prison officials to notify him of the results of the Inspector General's investigation despite his written requests for this information.  I am therefore

unable to state with certainty that plaintiff is not entitled to the benefit of the special circumstances exception to the PLRA's exhaustion requirement.

In sum, applying the tripartite test announced in the Second Circuit's August, 2004 collection of exhaustion cases and their progeny, I find genuine issues of fact including summary judgment on the issue of plaintiff's alleged failure to exhaust available administrative remedies, and therefore recommend denial of defendants' motion to dismiss on this procedural basis.

### C.   Personal Involvement

Turning to the merits of plaintiff's claims, defendants allege that Snyder's complaint discloses potential personal involvement in the events occurring at Washington on the part of only defendants Whittier and Funnye, and that none of them are implicated in the legal mail claims stemming from plaintiff's incarceration in Groveland.  This, defendants argue, provides a basis for dismissal of certain of plaintiff's claims.

Personal involvement of a defendant in alleging a constitutional deprivation is a prerequisite to an award of damages against that person under section 1983 against that person.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert.*

*denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a

section 1983 cause of action against an individual, a plaintiff must show

some tangible connection between the constitutional violation alleged and

that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986).

### 1.    Events at Washington

The only defendants alleged by the plaintiff to have had direct

involvement in or knowledge of the events at Washington are two corrections

officers directly implicated, defendants Whittier and Funnye, as well as the

Assistant Inspector General involved in the investigation of those matters,

Mark Miller.  Nothing in the record now before the court suggests any actual

involvement of or awareness by DOCS Commissioner Goord, Inspector

General Roy, or Washington Superintendent Plescia, in any of the relevant

events.  Instead, plaintiff's claims against those defendants appear to be

based purely upon their supervisory positions and Snyder's contention that

by virtue of their roles, they must have known about the incident, or the very

least should be charged with constructive knowledge of the constitutional

violations alleged.  These allegations are insufficient to implicate those

defendants in the matters involved; it is well established that a supervisor

cannot be liable for damages under section 1983 solely by virtue of being a

supervisor – there is no *respondeat superior* liability under section 1983.

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at

501.

It is true that a supervisory official can be found liable in a civil rights

setting such as that now presented in one of several ways: 1) the supervisor

may have directly participated in the challenged conduct; 2) the supervisor,

after learning of the violation through a report or appeal, may have failed to

remedy the wrong; 3) the supervisor may have created or allowed to continue

a policy or custom under which unconstitutional practices occurred; 4) the

supervisor may have been grossly negligent in managing the subordinates

who caused the unlawful event; or 5) the supervisor may have failed to act on

information indicating that unconstitutional acts were occurring. *Richardson*,

347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319,

323-24 (2d Cir. 1986). The plaintiff, however, has failed to present any

evidence which tends to establish a basis for finding liability on the part of

defendants Goord, Roy, or Plescia under any of those theories. Accordingly,

I recommend a finding that claims against them based upon lack of personal

involvement.

Plaintiff's claims against defendant Miller present a slightly different situation.  Defendant Miller was charged with investigating the incident implicated in plaintiff's excessive force claims.  At the time of the investigation, however, any harassment of him by Whittier had ended, and plaintiff had been transferred out of Washington.  Plaintiff does not allege the existence of any lingering effects of the events at Washington, following his transfer out of that prison, which could have been prevented had defendant Miller acted to end the constitutional violations involved.  Plaintiff's only quarrel with defendant Miller appears to be his failure, and the failure of his office, to notify him of the status of the investigation conducted in response to his communications inquiring in that regard.  This fact alone, however, provides no basis for a finding that defendant Miller was involved in the constitutional violations alleged.  *Cf. Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citing *Garrido v. Coughlin*, 716 F.Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where only allegation was that he ignored inmate's request for an

investigation)).

### 2.   Plaintiff's Legal Mail Claims

Plaintiff's legal mail claims involve actions taken by prison officials at Groveland, including those working in the prison mail room.  None of the individuals named in plaintiff's complaint, however, was employed at Groveland, and plaintiff has identified no basis to conclude that any of them, including particularly DOCS Commissioner Goord, had any awareness of or involvement in the decision to deny legal mail status to his communications to the National Gay and Lesbian Task Force or to open his returned mail sent to that agency.  Plaintiff's legal mail claim is subject to dismissal for failure to name, as a defendant, anyone proven to have been personally involved in that deprivation. *Bass*, 790 F.2d at 263.

### IV.   SUMMARY AND RECOMMENDATION

While plaintiff failed to file a grievance, and thereby avail himself of the comprehensive inmate grievance program offered to him as a New York State prisoner, to address the harassment allegedly endured at Washington at the hands of defendant Whittier and fellow inmates, in light of the existence of genuine issues of material fact I am unable to state that no reasonable factfinder could discern a proper basis exists to excuse this failure and find

that plaintiff should not be barred on this procedural basis from pursuing his

claims surrounding the events at Washington.  I therefore recommend that

defendants' motion for summary judgment dismissing plaintiff's excessive

force and harassment claim on this procedural ground be denied.  I do find,

however, that plaintiff has failed to demonstrate the personal involvement of

any of the defendants in his legal mail claim, and of defendants Goord, Roy,

Plescia and Miller in connection with the claims growing out of events

occurring at Washington, and therefore recommend that defendants' motion

for summary judgment dismissing all claims against those defendants be

granted.

Based on the foregoing, it is hereby

ORDERED that the time within which defendants must answer plaintiff's

complaint in this matter is hereby stayed and extended until ten days following

the issuance of a decision by Senior District Judge Thomas J. McAvoy

deciding the present summary judgment motion, or such other time as Judge

McAvoy shall direct; and it is further

RECOMMENDED that defendants' motion for summary judgment

dismissing plaintiff's complaint (Dkt. No. 20) be GRANTED, in part, and that

plaintiff's legal mail claim be DISMISSED in its entirety, and further that all

remaining claims be DISMISSED as against defendants Goord, Roy, Plescia and Miller, but that it otherwise be DENIED, and that the matter proceed with regard to plaintiff's constitutional claims against defendants Whittier and Funnye based upon events occurring at the Washington Correctional Facility.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk is directed to promptly forward copies of this order to the parties in accordance with this court's local rules.

Dated:       February 28, 2007
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

33