IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHAWN MICHAEL SNYDER,

                              Plaintiff,

        v.                                    Civil Action No.
                                              9:05-CV-01284 (TJM/DEP)

MR. WHITTIER, Corrections Officer,
Washington Correctional Facility; and
MR. FUNNYE, Corrections Officer,
Washington Correctional Facility,

                         Defendants.

_____

APPEARANCES:                          OF COUNSEL:
_____
FOR PLAINTIFF:

SHAWN MICHAEL SNYDER, *Pro Se*
04-B-1780
Livingston Correctional Facility
P.O. Box 1991
Sonyea, NY 14556

FOR DEFENDANT WHITTIER:

MARTIN, MARTIN LAW FIRM            MICHAEL S. MARTIN, ESQ.
511 Glen Street
Glens Falls , NY 12801

FOR DEFENDANT FUNNYE:

HON. ANDREW M. CUOMO               CHRISTOPHER W. HALL, ESQ.
Attorney General of                Assistant Attorney General
  the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Shawn Michael Snyder, an openly gay New York State

prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983,

complaining principally of a series of occurrences which he attributes to

his sexual orientation.  In the claims which remain in the action after a

ruling on an earlier, pre-answer summary judgment motion filed on behalf

of the defendants, Snyder asserts that he was harassed by prison workers

and fellow inmates and assaulted by Corrections Officer Whittier, one of

the named defendants, and that defendants Whittier and his co-worker,

Corrections Officer Funnye, failed to protect him from the harassment.

Plaintiff's complaint, which is comprehensive, asserts constitutional claims

under the First, Fourth, Eighth, and Fourteenth Amendments to the United

States Constitution.

Currently pending before the court are separate motions for

summary judgment filed on behalf of the two remaining named

defendants.[1]  In their motions, defendants Whittier and Funnye assert

_____

[1]    Defendant Whittier's motion seeks dismissal pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure or, alternatively, the entry of summary judgment
pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See* Notice of Motion

several grounds for dismissal including, *inter alia,* based upon plaintiff's

failure to exhaust available administrative remedies, renewing an

argument previously made but rejected as premature.  Both defendants

also seek the entry of summary judgment dismissing plaintiff's claims as

lacking in merit.  Additionally, defendant Funnye asserts entitlement to

qualified immunity from suit.  For the reasons set forth below I recommend

that both motions be granted, and the remaining portions of plaintiff's

complaint be dismissed.

I.      BACKGROUND[2]

        A.      Facts Underlying Plaintiff's Remaining Claims

        Plaintiff is a prison inmate entrusted to the care and custody of the

New York State Department of Correctional Services (the "DOCS"); at the

times relevant to his claims in this action he was designated to the

---

(Dkt. No. 64).  Since Whittier has answered plaintiff's complaint, a motion pursuant to
Rule 12(b)(6) is no longer appropriate, although that defendant could seek judgment
on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure
notwithstanding the current posture of the case.  *See Patel v. Contemporary Classics
of Beverly Hills*, 259 F.3d 123, 125-26 (2d Cir. 2001).  Because both defendants'
motions offer, and the court has considered, extensive materials outside of the
pleadings, I have chosen to address both motions as seeking the entry of summary
judgment under Rule 56 of the Federal Rules of Civil Procedure.

        [2]      For purposes of the pending summary judgment motions I relate these
facts in a light most favorable to the plaintiff, the non-moving party, with all inferences
drawn in his favor.  *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998).

Washington Correctional Facility ("Washington") although, as will later be seen, certain occurrences which followed his transfer out of Washington, and ultimately into the Groveland Correctional Facility ("Groveland"), are relevant to certain issues presented, including notably whether he properly exhausted available administrative remedies before commencing this suit. *See generally* Complaint (Dkt. No. 2).  Plaintiff is homosexual, a fact which, he claims, was well known at Washington.  *Id.* ¶ 2.

The events giving rise to plaintiff's claims date back to May of 2005, when he was moved from another location within the facility into the Washington B-2 housing dormitory.  Complaint (Dkt. No. 2) ¶ 1.  Shortly after his arrival in that unit Snyder began to experience harassment from defendant Whittier.  *Id.* ¶ 2.  Defendant Whittier's harassment included reference to the plaintiff using derogatory names associated with his sexual orientation, and led to the spread of abuse, fueled by encouragement from defendant Whittier, resulting in harassment from fellow inmates who are alleged to have engaged in a variety of abusive and hostile acts which included the throwing of trash, objects, debris, urine, and feces at him.[3]  *Id.* ¶¶ *2-24.*

---

[3]       According to the plaintiff, defendants' Whittier's harassment included use of the public announcement system within the dormitory to make derogatory

Defendant Whittier's ongoing harassment of the plaintiff led to a confrontation between the two on June 1, 2005, during the course of which Snyder was physically assaulted by the officer, who thrust his elbow and forearm into plaintiff's throat, forcing him to the floor.  Complaint (Dkt. No. 2) ¶¶ 24-28.  With plaintiff on the floor, defendant Whittier placed his knees on Snyder's middle back area and neck, and pulled his left arm up behind his back.  *Id.* ¶¶ 29-33.  Toward the end of the encounter, defendant Whittier pulled the plaintiff up by his arm and hair and dragged him out of the area, pushing him into a wall and punching his kidney area several times in the process.  *Id.* ¶¶ 34-39.

The involvement of defendant Funnye, another corrections officer at Washington, in the occurrences giving rise to plaintiff's claims is somewhat unclear from plaintiff's complaint.  That officer, who was also assigned to the B-2 dormitory, typically worked a shift extending from 3:00 pm until 11:00 pm; with the exception of a brief overlap of between five and fifteen minutes with workers who, like Whittier, were assigned to the

_____

comments regarding the plaintiff and, on one occasion, his reference to Snyder as "an ugly white faggot that nobody likes."  Complaint (Dkt. No. 2) ¶¶ 19, 22.  Defendant Whittier's encouragement of inmates to be abusive toward the plaintiff is alleged to have included a representation that he would buy dinner for any inmate who physically harmed Snyder.  *Id.* ¶ 23.

7:00 am to 3:00 pm shift, Funnye generally was not present in the housing unit together with Whittier.  Hall Aff. (Dkt. No. 63-4) Exh. 1 (Transcript of Plaintiff's Deposition, taken on October 5, 2007) at pp. 29-32.  Funnye was allegedly aware of defendant Whittier's harassment of the plaintiff, however, based upon comments made during the course of the shift change, as well as complaints by the plaintiff to Funnye regarding the matter.  *Id.* at pp. 43-44, 47.  Funnye was not present at the time of the alleged assault of the plaintiff by defendant Whittier, which occurred some two hours prior to Funnye coming on duty, although at the time of the shift change Whittier advised Funnye that "he beat that bitch's ass", in response to which defendant Funnye reportedly laughed.  *Id.* at pp. 49-50, 55.

When plaintiff awoke on or about June 3, 2005, his face was swollen, a condition for which he sought and received medical treatment, leading to a diagnosis to the effect that plaintiff was suffering from an infection.  *Id.* at pp. 63-64.  During a follow-up visit, a prison doctor informed Snyder that "the stress [from the assault] very likely exacerbated the infection."  *Id.* at p. 65.  When plaintiff returned from the initial treatment of his swollen face, he was transferred into Washington's E-1

6

dormitory.  Complaint (Dkt. No. 2) at ¶ 51.  While there, he was informed

by several inmates that they had been encouraged by defendant Whittier,

directly or indirectly, to physically assault him.  *Id.* ¶¶ 52-54.

Plaintiff was moved into the D-1 dormitory at the facility on or about

June 20, 2005.  *Id.* ¶ 57.  While there, plaintiff's locker was broken into

and his personal property was stolen.  *Id.*  Plaintiff attributes the incident

to defendant Whittier, who allegedly instructed other inmates to commit

the theft.  *Id.*

B.    Plaintiff's Efforts to Exhaust Available Remedies

Concerned that he would be subject to reprisal for taking such

action, plaintiff did not file a formal grievance regarding the assault by

Corrections Officer Whittier while at Washington.  Complaint (Dkt. No. 2) ¶

59.   Plaintiff did, however, take other steps while there to lodge

complaints regarding defendant Whittier's actions.  After earlier complaints

registered verbally to other prison employees, including Corrections

Officers Funnye and Graves, went unaddressed, *see* Complaint (Dkt. No.

2) ¶¶ 21, 42, plaintiff sent a letter dated July 7, 2005 to Corrections

Lieutenant Greene, complaining of the assault by defendant Whittier and

expressing fear of retribution at the hands of that corrections officer; a

copy of that letter was forwarded by Snyder to Corrections Lieutenant Hopkins.[4]  Complaint (Dkt. No. 2) ¶ 60, Exh. 1.  Five days later, apparently precipitated by his letter to Lieutenant Greene, plaintiff was asked by Corrections Sergeant Belden to provide a formal, written statement regarding the assault, and was taken by Sergeant Belden to the prison infirmary for a medical evaluation.  Complaint (Dkt. No. 2) ¶ 61.

Plaintiff was transferred into the Great Meadow Correctional Facility ("Great Meadow") on July 14, 2005.  *Id.* ¶¶ 62-63.  There Mark Miller, an investigator with the office of the DOCS Inspector General ("IG"), interviewed Snyder on July 15, 2005 regarding the altercation with defendant Whittier and defendant Funnye's failure to report the harassment and altercation.  *Id.* ¶ 64.  During that session, Miller advised the plaintiff that he had been transferred out of Washington for his safety, and that in light of his sexual orientation and the significant probability that similar acts would recur in the future, his contemplated transfer into the Greene Correctional Facility had been rescinded, and instead he would be

---

[4]      Plaintiff's complaint does not provide specifics regarding the official positions of Lieutenants Greene and Hopkins including, notably, whether either could properly be characterized as Corrections Officer Whittier's supervisor, nor does he indicate whether those individuals were officially designated by prison officials at Washington to receive inmate complaints regarding the actions of corrections workers.

moved "West and closer to home[.]"  *Id.* ¶¶ 65-66.  Plaintiff was transferred to Groveland later that same day.  *Id.* at ¶ 67.

On July 22, 2005, plaintiff submitted a written request to the Inspector General's office for information regarding the assault by defendant Whittier, and seeking assistance in pursuing "judicial action" against the corrections officer.  *Id.* ¶ 68, Exh. 3.  Despite this and subsequent written communications to Investigator Miller and Inspector General Richard Roy, plaintiff has received no information regarding the status of the investigation.  *Id.* ¶¶ 67-69, Exhs. 9, 17.

On August 24, 2005, while at Groveland, plaintiff filed a formal written grievance regarding the physical assault by Corrections Officer Whittier.  Complaint (Dkt. No. 2) ¶ 76, p. 60, ¶ B, Exh. 12.  The grievance was returned to the plaintiff, however, based upon the fact that it was filed beyond the fourteen-day deadline for initiating such grievances, and did not recite any mitigating circumstances which would provide a ground for overlooking its untimeliness.[5,6]  Plaintiff did not appeal that determination

---

[5]     DOCS Directive 4040, which governs the filing of inmate grievances, authorizes an Inmate Grievance Program Supervisor ("IGPS") to permit the late filing of a grievance when presented with "mitigating circumstances."  *See* O'Brien Aff. (Dkt. No. 20-6) ¶ 12, Exh. 3.

[6]     The deadline for filing grievances under New York's IGP has since been extended to twenty-one days.  *See* 7 N.Y.C.R.R. § 701.5(a)(1).

or any other grievance alleging harassment, excessive force, or other

similar claims arising out of the events at Washington, to the DOCS

Central Office Review Committee ("CORC").[7]  Eagan Aff. (Dkt. No. 20-5)

¶¶ 5-6.

II.   <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on or about September 27, 2005.[8]

Dkt. No. 2.  Named as defendants in Snyder's complaint are DOCS

Commissioner Glenn S. Goord; Richard Roy, the DOCS Inspector

General; Assistant Deputy Inspector General Mark Miller; James Plescia,

the Superintendent at Washington; and Corrections Officers Whittier and

Funnye.  *Id.*  Plaintiff's complaint asserts a variety of claims growing out of

the events at Washington and Groveland, alleging deprivation of his rights

under the First, Fourth, Eighth, and Fourteenth Amendments to the United

States Constitution, as well as a host of pendent state statutory and

common law claims.  *Id.*  As relief, plaintiff seeks both the entry of an

---

[7]     While it is far from clear, it appears from plaintiff's deposition testimony that on March 15, 2006 he filed a subsequent grievance at Washington challenging the refusal of the IGP supervisor to accept his August 24, 2005 complaint; that grievance was denied at the facility level, and the denial was upheld on appeal to the CORC. *See* Hall Aff. (Dkt. No. 63-6) Exh. 1 at pp. 117-122.

[8]     This action was initially filed in the United States District Court for the Western District of New York, but was transferred here by order issued by District Judge David G. Larimer on September 29, 2005.  *See* Dkt. No. 4.

injunction and awards of compensatory and punitive damages.  *Id.*

Following the grant of plaintiff's application for leave to proceed *in forma pauperis*, Dkt. No. 5, and the return of service acknowledgment forms, Dkt. Nos. 7-11, 17, in lieu of answering defendants moved requesting the entry of summary judgment.  Dkt. No. 20.  That motion resulted in my issuance of a report and recommendation, and the entry of an order by Senior District Judge Thomas J. McAvoy, the net affect of which was that all claims against defendants Goord, Roy, Plescia, and Miller, as well as plaintiff's legal mail claim, were dismissed, and the portion of defendants' motion seeking dismissal of plaintiff's claims for failure to exhaust administrative remedies was denied, although with leave to renew after the close of discovery.  Dkt. Nos. 29, 32.

Following the joinder of issue, *see* Dkt. Nos. 36, 37, and pretrial discovery, the remaining two defendants, who are now separately represented, both filed motions seeking summary judgment dismissing plaintiff's remaining claims.  Dkt. Nos. 63-69.  In his motion, defendant Funnye again urges failure to exhaust as a procedural basis for dismissal of plaintiff's claims, additionally asserting that in any event plaintiff's complaint does not set forth a cognizable constitutional claim against him

and further arguing that in any event he is entitled to qualified immunity from suit.  For his part, defendant Whittier also argues failure to exhaust as well as contending that as a matter of law, plaintiff cannot prove the existence of a constitutional deprivation.  Since the filing of defendants' motions, plaintiff has responded in opposition to both.  Dkt. Nos. 75, 85.

Defendants' motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old*

*Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the non-moving party.  *Jeffreys*, 426 F.3d at 553; *Wright*, 132 F.3d at 137-38.  The entry of summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Failure To Exhaust Administrative Remedies

In their motions, both of the remaining defendants assert that plaintiff's claims are barred based upon his failure to satisfy the requirement under 42 U.S.C. § 1997e(a) that he fully exhaust available administrative remedies before commencing an action.  Plaintiff counters by asserting that his failure to file a formal grievance was the result of

harassment and intimidation on the part of defendant Whittier, and that in any event his efforts to bring matters to the attention of prison officials, including an investigation with the DOCS Inspector General, should be deemed sufficient to satisfy his exhaustion obligation.

          1.    <u>Exhaustion Generally</u>

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the

dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also*

*Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the

PLRA requires "proper exhaustion" of available remedies).  "Proper

exhaustion" requires a plaintiff to procedurally exhaust his or her claims by

"compl[ying] with the system's critical procedural rules."  *Woodford*, 548

U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43

(2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of

a grievance through less formal channels may constitute claim exhaustion

"in a substantive sense", an inmate plaintiff nonetheless must meet the

procedural requirement of exhausting his or her available administrative

remedies within the appropriate grievance construct in order to satisfy the

PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98)

(emphasis omitted).

    In a series of decisions rendered since the enactment of the PLRA,

the Second Circuit has crafted a three-part test for determining whether

dismissal of an inmate plaintiff's complaint is warranted for failure to

satisfy the PLRA's exhaustion requirement.[9]  *Macias*, 495 F.3d at 41; *see*

*Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004).  Under the

---

[9]       As will be seen, whether the *Hemphill* test survives following the
Supreme Court's decision in *Woodford*, has been a matter of some speculation.  *See,*
*e.g.*, *Newman v. Duncan,* NO. 04-CV-395, 2007 WL 2847304, at * 2 n.4 (N.D.N.Y.
Sept. 26, 2007) (McAvoy, S.J. and Homer, M.J.) .

prescribed algorythm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.  If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.  In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[10]  *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.

a)      <u>Availability of Remedy</u>

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the DOCS and recognized as an

---

[10]      In practicality these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap.  *See Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

"available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[11]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision.  *Id.* § 701.5(c).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*,

---

[11]     The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Despite an inmate's entitlement in most instances to file and pursue a grievance in accordance with the IGP, there are circumstances under which the grievance procedure nonetheless is deemed not to have been available to an inmate plaintiff. *See Hemphill*, 380 F.3d at 687-88. Thus, for example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, . . . or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove,* 2007 WL 389003, at *8 (citations omitted) (noting, for example, that a defendant's failure to advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable). When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Id.* at 688 (quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

b)      Presentation of Defense/Estoppel

_____The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Hemphill,* 380 F.3d at 686 (citations omitted).

c)      Special Circumstances

The third, catchall factor to be considered under the Second Circuit's prescribed exhaustion rubric focuses upon whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies.  *Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir. 2004); *Hargrove,* 2007 WL 389003, at *10.  Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable.  *Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano*).

2.    Defendant Funnye

In his motion for summary judgment, defendant Funnye asserts that plaintiff's claims against him are barred in light of the fact that he did not file a timely grievance regarding the matter, and in any event based upon his failure to name Funnye in any of his written complaints regarding the incident.  The record now before the court reflects that while plaintiff has articulated complaints regarding the Whittier incident on several occasions, both verbally and in writing, none referenced defendant Funnye.  The grievance filed by Snyder while at Groveland on August 24, 2005 makes no mention of that defendant.  *See* Complaint (Dkt. No. 2) Exh. 12; *see also* Hall Aff. (Dkt. No. 63-6) Exh. 1 at p. 105.  Similarly the letter written by plaintiff to Lieutenant Green on July 7, 2005, while he remained confined in Washington, describing the harassment and assault experienced by him, focuses upon the actions of defendant Whittier and fails to implicate the involvement of defendant Funnye.  Hall Aff. (Dkt. No. 63-2) Exh. 1 at pp. 79-82.

It is true that New York regulations relating to the filing of a grievance by a New York prison inmate do not require that an inmate identify every individual involved in the incident complained of in order to properly

exhaust remedies as to those individuals.  *See, e.g., Percinthe v. Julien,*
No. 08 CIV. 893, 2008 WL 4489777 at *2 (S.D.N.Y. Oct. 4, 2008) (citing
*Turner v. Goord,* 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005)).  Had
plaintiff alleged that Corrections Officer Funnye was involved in the
Whittier assault, or stood by and failed to protect the plaintiff from that
assault, this principle would potentially salvage any cause of action
against defendant Funnye.  Snyder's claim against Officer Funnye,
however, is distinct from that against defendant Whittier, in that it asserts
that Officer Funnye failed to report the incident after it happened to proper
authorities.  Given this circumstance, Snyder's actions did not result in the
proper exhaustion of his administrative remedies against defendant
Funnye even if it is determined that he filed a proper grievance regarding
the Whittier assault.  *Percinthe, 2008 WL 4489777, at *2* ("[A]n inmate has
not exhausted administrative remedies against a person – not named in a
grievance – whom the inmate later claims 'to have been aware of . . .
systemic problepis [sic] and who failed to correct them.'") (citation
omitted).

Plaintiff may argue that he should be excused from the requirement
of filing a grievance against defendant Funnye in light of the intimidation

which he experienced at Washington.  The record is clear, however, that any intimidation experienced by Snyder emanated from defendant Whittier, and there is nothing in the record to suggest defendant Funnye's participation in that alleged intimidation.  Alleged intimidation will only provide a basis to excuse the filing of a grievance against the particular person alleged to have engaged in the intimidation, and does not extend to other prison workers.  *See Larry v. Byno*, No. 9:01-CV-1574, 2006 WL 1313344, at *3-4 (N.D.N.Y. May 11, 2006) (McAvoy, S.J.).

In sum, the record before the court reflects that plaintiff did not file a proper and timely grievance regarding defendant Funnye's alleged inaction, nor is there any basis to excuse him from that requirement or estop defendant Funnye from asserting failure to exhaust as an affirmative defense.  Accordingly, I recommend that plaintiff's claims against defendant Funnye be dismissed on this procedural basis.

### 3.   Defendant Whittier

The exhaustion of remedies analysis with regard to defendant Whittier is distinctly different from that with regard to defendant Funnye.  It is true that plaintiff did not file a formal grievance regarding Whittier's assault while at Washington.  Although plaintiff did file a grievance

regarding the matter on August 24, 2005 while at Groveland, it is clear, particularly in light of the Supreme Court's decision in *Woodford,* that the filing and pursuit to completion of an untimely grievance does not satisfy the PLRA's exhaustion requirement.  *See Woodford*, 548 U.S. at 83-84, 126 S. Ct. at 2382.

Arguing that plaintiff should be held to the strict exhaustion requirement contemplated under the PLRA, defendant Whittier maintains that the exceptions recognized by the Second Circuit in its collection of decisions rendered in 2004, including *Hemphill*, were effectively overruled by the Supreme Court in *Woodford*, citing this court's decision in *Miller v. Covey,* No. 9:05-CV-649, 2007 WL 952054 (N.D.N.Y. Mar. 29, 2007) (Kahn, S.J. and DiBianco, M.J.).  *Miller,* however, was decided prior to issuance of the Second Circuit's decision in *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007).  In *Macias*, which involved claims brought by a federal prison inmate construed as asserting Eighth Amendment claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 407 U.S. 388, 91 S. Ct. 1999 (1971), as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 *et seq.*, defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon plaintiff's

failure to exhaust available administrative remedies.  *Macias*, 495 F.3d at

40.  Reiterating the importance of exhaustion in both a substantive and a

procedural sense, the Second Circuit concluded that while a prisoner may

have substantively exhausted remedies by making informal complaints

regarding the conditions at issue, the PLRA, as illuminated by *Woodford,*

requires proper procedural exhaustion through the available grievance

channels.  495 F.3d at 41.  The court left open, however, the possibility

that notwithstanding the Supreme Court's decision in *Woodford*, a

defendant could be precluded from asserting failure to exhaust available

administrative remedies in the event of a finding that threats by prison

officials may have deterred the compliance with the PLRA exhaustion

requirements, including under *Hemphill*.  *Id.* at 44-45.  The court in *Macias*

also noted that the plaintiff did not assert that the available internal

remedial scheme was so confusing as to excuse his failure to avail himself

of that process, thereby obviating the need for the court to determine what

effect, if any, *Woodford* would have upon the *Hemphill* holding to the effect

that a reasonable misinterpretation of the available scheme could justify

an inmate's failure to follow the procedural rules.[12]  *See Amador v.*

---

[12]      During his deposition, plaintiff testified that he was both aware of and
familiar with the New York IGP.  *See* Hall Aff. (Dkt. No. 63-5) Exh. 1 at pp. 74-75.

*Superintendents of Dep't of Correctional Serv.*, No. 03 CIV. 0650, 2007 WL 4326747, at *6 (S.D.N.Y. Dec. 4, 2007).  It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry.  *Id.* at *7.

Attempting to avail himself of the *Hemphill* exceptions, plaintiff asserts that he should be excused from the exhaustion requirement both due to his fears of retribution from defendant Whittier and other corrections workers at Whittier's urging, and because his complaints were substantively exhausted through the IG's investigation.  Neither of these contentions, however, suffices to salvage plaintiff's otherwise unexhausted claim.  Plaintiff's lodging of complaints leading to an investigation by the DOCS IG, while perhaps constituting substantive exhaustion, does not satisfy the PLRA's procedural exhaustion requirement.  *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *Macias*, 495 F.3d at 43.  Plaintiff's contention that he did not file a grievance at Washington concerning the matter out of fear of retribution is fatally undermined by the fact that while he was transferred out of Washington and into Groveland on July 15, 2005, it was not until more than one month later, on August 24, 2005, that he first attempted to file a grievance regarding the matter.  *See Newman*

*v. Duncan,* No. 04-CV-395, 2007 WL 2847304, at \*4 (Sept. 26, 2007)
(finding that the failure of the plaintiff to file a grievance promptly upon
transfer into another facility, where he testified to feeling "safe", provided a
basis for court dismissal because of the plaintiff's failure to exhaust
available administrative remedies).  The record fails to disclose any
indication of a realistic fear of retribution on plaintiff's part at Groveland.
Accordingly, I find no basis to conclude that the grievance process was
functionally unavailable to the plaintiff.

It could be argued that defendant Whittier should be estopped from
asserting failure to exhaust as a defense by virtue of the investigation into
the incident and the fact that when Snyder did attempt to file a grievance,
he was advised that if the matter has previously been brought to the
attention of prison officials it "[was] not necessary to have [the] matter
readdressed."  That statement, however, was made on August 24, 2005,
significantly after the relevant events underlying the plaintiff's claim took
place and indeed more than a month after plaintiff's transfer into
Groveland.  Under these circumstances prison officials did not mislead
plaintiff to believe that the filing of a grievance was not necessary prior to
the deadline for filing a timely grievance and, accordingly, I conclude there

is no basis to estop defendant Whittier from asserting that affirmative defense.[13]  *See Macias*, 495 F. 3d at 45.

In sum, I conclude that plaintiff has failed to procedurally exhaust available administrative remedies by filing and pursuing to completion a proper grievance against defendant Whittier regarding the events forming the basis of his claims in this action.  Accordingly, finding no basis to excuse that requirement or estop defendant Whittier from asserting plaintiff's failure to exhaust administrative remedies as a defense, I recommend that plaintiff's claims against defendant Whittier also be dismissed upon this procedural basis.

C.   Merits

Both defendants Whittier and Funnye also seek the entry of summary judgment dismissing plaintiff's claims as lacking in merit.  For his part,

---

[13]    Some courts have taken the position that the actual issues surrounding the defense of failure to exhaust should properly be determined by the court, rather than by a jury.  *See, e.g., Amador,* 2007 WL 4326747, at *5 n. 7 (examining cases). There does not appear to be any cogent basis, however, to distinguish failure to exhaust from other affirmative defenses including, for example, statute of limitations, which are often presented to juries or decided by the court based upon a jury's resolution of critical fact disputes.  Accordingly, when questions of fact exist regarding failure to exhaust, the entry of summary judgment is not appropriate and the court should not engage in factfinding in order to address the defense.  *Miller v. Covey,* No. 9:05-CV-649, 2007 WL 952054, at *2 (N.D.N.Y. Mar. 29, 2007) (Kahn, D.J. and DiBianco, M.J.) (citing *Pendergrass v. Sanney,* No. 01 CV 243A, 2004 WL1946458, at *2 (W.D.N.Y. Aug. 18, 2004)).

defendant Funnye alleges that none of his actions arose to a level of constitutional significance, but instead merely represent alleged verbal harassment and failure to report an incident, as distinct from failing to intercede, all matters which are not actionable under section 1983. Defendant Whittier asserts that his verbal harassment of the plaintiff does not provide a basis for liability, and additionally urges the court to examine the record and find as a matter of law that the incident with Whittier could not have occurred as plaintiff alleges.

1.   <u>Eighth Amendment Generally</u>

Plaintiff's claims against defendants Funnye and Whittier arise principally under the Eighth Amendment.  A plaintiff's constitutional right under that amendment to be free from cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999) (citations and quotations omitted).  The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.

Ct. 995, 999 (1992) (applying *Whitley* to all excessive force claims); *see also Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462 (1973)).  Analysis of claims of cruel and unusual punishment requires both objective and subjective examinations.  *Hudson,* 503 U.S. at 8, 112 S. Ct. at 999; *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991);  *Griffen*, 193 F.3d at 91.

The objective prong of the inquiry is contextual, and relies upon "contemporary standards of decency." *Hudson*, 503 U.S. at 8, 112 S. Ct. at 1000 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976)).  Turning to the subjective element, to prevail a plaintiff must establish that the defendant under consideration acted with a sufficiently culpable state of mind.  *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*, 503 U.S. at 8, 112 S. Ct. at 999).  The principal focus of this inquiry "turns on 'whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson,* 481 F.2d at 1033).

When addressing an excessive force claim under the Eighth

Amendment calculus, the court can consider the extent of the injury

suffered by the inmate plaintiff.  *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999.

While the absence of significant injury is certainly relevant, it is not

dispositive, as the defendants seemingly suggest.  *Id.*  As the Supreme

Court has noted,

> [w]hen prison officials maliciously and sadistically
> use force to cause harm, contemporary standards
> of decency always are violated.  This is true
> whether or not significant injury is evident.
> Otherwise, the Eighth Amendment would permit
> any physical punishment, no matter how diabolic or
> inhuman, inflicting less than some arbitrary quantity
> of injury.

*Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000 (citations omitted); *see also*

*Velasquez v. O'Keefe*, 899 F. Supp. 972, 973 (N.D.N.Y. 1995) (McAvoy,

C.J.) (quoting *Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000); *Romaine v.*

*Rawson,* 140 F. Supp. 2d 204, 211 (N.D.N.Y. 2001) (Kahn, J.).  Even a *de*

*minimis* use of physical force can constitute cruel and unusual punishment

if it is "repugnant to the conscience of mankind."[14]  *Hudson*, 503 U.S. at 9-

---

[14]     It should be noted, however, that in practice a truly *de minimis* use of
force will rarely suffice to state a constitutional claim.  *Hudson,* 503 U.S. at 9-10, 112
S. Ct. at 1000 ("[N]ot . . . every malevolent touch by a prison guard gives rise to a
federal cause of action"); *Griffen*, 193 F.3d at 91 (quoting *Romano v. Howarth,* 998
F.2d 101, 105 (2d Cir. 1993)); *Johnson*, 481 F.2d at 1033 ("Not every push or shove,
even if it later may seem unnecessary in the peace of a judge's chambers, violates a
prisoner's constitutional rights").

10, 112 S. Ct. at 1000 (citations omitted).  The extent of an inmate's injury, then, is but one of the factors to be considered in determining a prison official's use of force was "unnecessary and wanton"; courts should also consider the need for force, whether the force was proportionate to the need, the threat reasonably perceived by the officials, and what, if anything, the officials did to temper their use of force.  *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085 (citing, *inter alia*, *Johnson*, 481 F.2d at 1033). Under *Hudson*, even if the injuries suffered by a plaintiff "'were not permanent or severe', a plaintiff may still recover if 'the force used was unreasonable and excessive.'"  *Corselli v. Coughlin*, 842 F.2d 23, 26 (2d Cir. 1988) (quoting *Robinson v. Via*, 821 F.2d 913, 924 (2d Cir.1987)).

      2.    <u>The Evidence in the Case</u>

      a)    <u>Defendant Funnye</u>

Plaintiff's claims against defendant Funnye are two-fold.  Initially, he alleges that defendant Funnye participated in threats and the verbal harassment leveled against him.  It is well established, however, that mere verbal harassment of an inmate by a corrections worker, as unprofessional as such conduct may be, does not rise to a level of

_____

constitutional significance.  *See Jermosen v. Coughlin,* 878 F. Supp. 444,

449 (N.D.N.Y. 1995) (McAvoy, C.J.).  42 U.S.C. § 1983 is not designed to

rectify harassment or verbal abuse.  *Alnutt v. Cleary*, 913 F.Supp. 160,

165-66 (W.D.N.Y. 1996) (citations omitted).  Consequently, mere

allegations of verbal abuse do not support a claim of a constitutional

violation, and are not cognizable under 42 U.S.C. § 1983.  *See Moncrieffe*

*v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29,

2000) (Mordue, J.) (allegations that corrections officer laughed at and

insulted inmate were not actionable under section 1983) (citations

omitted); *Carpio v. Walker*, No. Civ.A.95CV1502, 1997 WL 642543, at *6

(N.D.N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J. ) ("Verbal

harassment alone, unaccompanied by any injury, no matter how

inappropriate, unprofessional, or reprehensible it might seem, does not

rise to the level of an Eighth Amendment violation") (citations omitted).

The second claim against defendant Funnye stems from his alleged

failure to report the incident between the plaintiff and Whittier after

learning of it.  Importantly, based upon the record now before the court, it

is uncontradicted that defendant Funnye did not learn of it until after the

fact, and thus obviously had neither a duty nor a reasonable opportunity to

intercede to avoid or end the constitutional violation.  While it is clear that

a corrections worker has an obligation to intercede and prevent an

ongoing or future constitutional violation where he or she has a

reasonable opportunity to do so, *see Anderson v. Branen*, 17 F.3d 552,

557 (2d Cir. 1994), the failure of a corrections worker to report an incident

which has occurred in the past, and where no similar future conduct has

recurred, does not give rise to liability for a constitutional deprivation.  *See

Parker v. Fogg*, No. 85-CV-177, 1994 WL 49696, at *8 (N.D.N.Y. Feb 17,

1994) (McCurn, S.J.) (finding no liability on the part of the defendant

where there was no "realistic opportunity" to prevent the constitutional

violation).  Accordingly, I recommend dismissal of all claims against

defendant Funnye on the merits.

b)   <u>Defendant Whittier</u>

In the portion of his motion addressing the merits of plaintiff's claims,

defendant Whittier argues that plaintiff cannot meet the objective prong of

the Eighth Amendment test since he did not immediately seek medical

treatment for injuries suffered during the course of the incident.

While having previously noted this, it bears repeating that the

absence of physical injury alone, while relevant, is not dispositive of

35

plaintiff's excessive force claims.  *Hudson,* 503 U.S. at 7, 112 S. Ct. at 999.  The extent of a plaintiff's injuries is but one of the factors to be considered in determining whether defendant Whittier's use of force was excessive.  *Whitley,* 475 U.S. at 321, 106 S. Ct. at 1085 (citing *Johnson,* 481 F.2d at 1033).

In this instance, plaintiff first complained of back problems and a "kink" in his neck which prevented him from turning his head on June 17, 2005, sixteen days after the alleged assault.  Snyder Aff. (Dkt. No. 75-2) at ¶ 34; *Id.* (Dkt. No 75-5) Exh. C. at p. 20.   Plaintiff's ambulatory record reflects multiple occasions on which he sought treatment for neck, back, and/or shoulder pain.  Snyder Aff. (Dkt. No. 75-5) Exh. C.; Snyder Aff. (Dkt. No. 85-7) Exh. C.  At one point plaintiff was prescribed physical therapy for his neck and shoulder pain, which plaintiff attributed to defendant Whittier's assault.  Snyder Aff. (Dkt. No. 75-5) Exh. C.; Snyder Aff. (Dkt. No. 85-7) Exh. C.

The fact that plaintiff suffered back and neck injuries requiring medical attention, and which a reasonable factfinder could properly attribute to Whittier's alleged use of force, distinguishes this case from others where a lack of injury justified the entry of summary judgment

dismissing excessive force claims under the Eighth Amendment.[15]  *See, e.g., Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (the fact that the plaintiff, who claims he was "bumped, grabbed, elbowed, and pushed" by the defendants did not rise to a level of constitutional significance since plaintiff did "not maintain that he experienced any pain or injury as a result of the physical contact"); *Cunningham v. Rodriguez*, No. 01 Civ. 1123, 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22, 2002) (finding the plaintiff unable to establish an Eighth Amendment violation where the use of force was *de minimus* and the plaintiff had "no injuries or complaints").  "The law

---

[15]     While it is true that plaintiff's ambulatory record generally does not recite that Snyder ascribed his symptoms to the incident with defendant Whittier, a reasonable jury could find that defendant Whittier's thrusting his right knee onto plaintiff's neck, grabbing plaintiff's left wrist, and twisting it upward pulling plaintiff's arm up behind his back to the point where plaintiff's hand touched the back of his head could cause the symptoms of which plaintiff complained.  Complaint (Dkt. No. 2) at ¶¶ 29-33; Snyder Aff. (Dkt. No. 75-5) Exh. C.

        Defendant Whittier notes that plaintiff suffered from well-documented back problems that preceded their altercation.  Defendant Whittier's Memorandum (Dkt. No. 66).  Plaintiff admits that he was diagnosed with lower back problems, specifically scoliosis, and this diagnosis was confirmed on December 23, 2004 in a preliminary report, which stated there appeared "to be a very mild rotary scoliosis of the lower thoracic vertebral segments."  Hall Aff. (Dkt. No. 63-6) Exh. 1 at p.114; Snyder Aff. (Dkt. No. 85-7) Exh. C.  Defendant Whittier also notes that the diagnostic imaging report from an examination of plaintiff from August 17, 2005 showed no fractures or subluxations of the spine; a later report on April 8, 2006, however, noted disc protrusions in two places in plaintiff's upper spine.  Snyder Aff. (Dkt. No. 85-7) Exh. C.   It is not the court's function, when considering a motion for summary judgment, to determine whether plaintiff's upper neck, shoulder, and back pain or the disc protrusions discovered on April 8, 2006 were caused by his scoliosis, or instead caused or aggravated by defendant Whittier's assault. These are factual disputes that should be determined a jury.

does not require a plaintiff be bleeding or in need of immediate medical attention to maintain a cause of action for excessive force."  *Gomez v. City of New York*, No. 05 Civ. 2147, 2007 WL 5210469, at *7 (S.D.N.Y. May 28, 2007).  Under the circumstances the court is not positioned to find, as a matter of law, that plaintiff has failed to meet the objective prong of the governing Eighth Amendment test.[16]

In addition to arguing that he cannot establish that excessive force was used against him, defendant Whittier maintains that as a matter of law plaintiff's claims cannot be proven, since based upon the chronology of events it is "impossible" that the assault could have occurred as related by the plaintiff in his complaint.  In support of that argument, defendant Whittier states that while plaintiff alleged in his complaint that the assault occurred on June 1, 2005, in his deposition testimony he alleged the assault occurred between June 1 and June 6, 2005.  Defendant Whittier's Memorandum (Dkt. No. 66).  Defendant Whittier claims that he could not have assaulted plaintiff because, according to his testimony, Snyder normally would have been attending the computer repair program at the time the altercation occurred.    Defendant Whittier's Memorandum (Dkt.

---

[16]     It does not appear that in his motion defendant Whittier is contending that evidence is lacking to support the subjective element of the governing test.

No. 66); Hall Aff. (Dkt. No. 63-6) Exh. 1 at pp.124-25.  Subsequently, Snyder acknowledged that the incident most likely happened on May 31, 2005.  Snyder Aff. (Dkt. No. 75-2) at ¶ 46.  Plaintiff also stated in his deposition testimony that he normally would be in the computer repair program at the time of the incident with defendant Whittier, but plaintiff went on to state that "[t]he only exception to that is if the program was closed for the day."  Hall Aff. (Dkt. No. 63-6) Exh. 1 at p.125.  Plaintiff claims that he was not in the computer repair program on the day of the incident.  Snyder Aff. (Dkt. No. 75-2) at ¶ 50.

Defendants' argument regarding the implausibility of plaintiff's version represents little more than an open invitation for the court to resolve critical issues of material fact.  While defendant Whittier denies the incident and presents a facially plausible explanation for why it could not have occurred as alleged by Snyder, to accept defendant Whittier's version over that of the plaintiff would entail a credibility assessment not properly made by the court.  Accordingly, I recommend denial of the portion of defendant Whittier's summary judgment motion attacking the merits of plaintiff's Eighth Amendment claim as it relates to the alleged

use of excessive force on this basis.[17]

## IV.   SUMMARY AND RECOMMENDATION

Plaintiff's claims against both Funnye and Whittier are procedurally precluded, based upon his failure to comply with the PLRA's exhaustion of remedies requirement before commencing suit.  I therefore recommend dismissal of all remaining claims in the action on that basis.[18]  Turning to the merits of the case, those claims which relate to verbal harassment on the part of both defendants are subject to dismissal as not presenting claims which are constitutionally cognizable.  Similarly, plaintiff's claim against defendant Funnye based upon his failure to report the alleged assault by defendant Whittier are lacking in merit.  Plaintiff's claims against defendant Whittier stemming from his alleged assault of the plaintiff, however, present triable issues of fact which, were this case to

---

[17]     As defendant Whittier correctly argues, plaintiff's claims against him based upon the use of verbal harassments and threats are subject to dismissal as a matter of law for the reasons already set forth with respect to the allegations against his co-defendant. See pp. 33-34, *ante*.

[18]     In his motion defendant Whittier correctly observes that among the claims asserted by the plaintiff are those raised under New York common law including, *inter alia*, for breach of fiduciary duty, battery, and conspiracy.  As defendant Whittier has argued, those claims are barred by virtue of N.Y. Correction Law § 24, in combination with the Eleventh Amendment, which together preclude the assertion of pendent state law claims against corrections workers in their individual capacities for matters occurring within the discharge of their duties, whether in state or federal court. *See Ierardi v. Sisco,* 119 F.3d 183, 186 (2nd Cir. 1997) (citations omitted); *Baker v. Coughlin*, 77 F.3d 12, 15-16 (2d Cir. 1996); *Parker,* 1994 WL 49696, at *9.

proceed notwithstanding plaintiff's failure to exhaust, would require a trial in order to resolve genuinely disputed issues of fact.

Based on the foregoing, it is hereby respectfully

RECOMMENDED that the motion of defendant Funnye (Dkt. No. 63) and the motion of defendant Whittier (Dkt. No. 64), both seeking the entry of the summary judgment dismissing plaintiff's complaint, be GRANTED, and that all remaining claims in the action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

Dated:     December 12, 2008
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge